UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JUN - 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Reginald S. Puifory
    Fed. Reg. No. 10597-007
    USP-Lewisburg
    P.O. Box 1000
    Lewisburg, PA 17837

        Plaintiff,

    v.

Edward F. Reilly, Jr., Chairman
of the U.S. Parole Commission,

Cranston J. Mitchell, Commissioner
of the U.S. Parole Commission,

Deborah A. Spagnoli, Commissioner
of the U.S. Parole Commission,

Patricia K. Cushwa, Commissioner
of the U.S. Parole Commission, and

Isaac Fulwood, Jr., Commissioner
of the U.S. Parole Commission

    United States Parole Commission
    5550 Friendship Blvd., Suite 420
    Chevy Chase, MD 20815-7286

        Defendants.

Case: 1:07-cv-01007
Assigned To : Lamberth, Royce C.
Assign. Date : 6/5/2007
Description: Civil Rights-Non Employ.

## COMPLAINT

1. Plaintiff seeks to vindicate rights protected by the Ex Post Facto
Clause of Article 1, Section 9 of the United States Constitution, the
Fifth and Fourteenth Amendments to the United States Constitution, and
federal law. This Court has jurisdiction over plaintiff's claims
pursuant to 28 U.S.C., Sections 1331 and 1343 (a)(3), (a)(4), (b)(1),
and 42 U.S.C. 1983.

1

2.  The Court has authority to grant declaratory relief pursuant to 28 U.S.C. Sections 2201 and 2202.

3.  This Court has jurisdiction to declare the rights of the parties and to grant all further relief found necessary and proper.

## VENUE

4.  Venue is appropriate in this Court pursuant to 28 U.S.C., Section 1391(b).

## PARTIES

5.  Plaintiff Reginald S. Puifory is confined at the USP Lewisburg, pursuant to a sentence imposed in March 1978, or thereabouts, by the Superior Court of the District of Columbia.

6.  Defendant Edward F. Reilly, Jr. is current Chairman of the Commission.

7.  Defendant Patricia K. Cushwa is a current Commissioner of the Commission.

8.  Defendant Isaac Fulwood, Jr. is current Commissioner of the Commission.

9.  Defendant Cranston J. Mitchell is a current Commissioner of the Commission.

10.  Defendant Deborah A. Spagnoli is a current Commissioner of the Commission.

11.  Defendants, as the Chairman and/or Commissioners of the Commission, were responsible for reviewing and acting upon plaintiff's request for parole in accordance with the United States Constitution and federal law and regulations.

## INTRODUCTION

12.  On March 10, 1978, plaintiff Reginald S. Puifory was sentenced to a term of twenty-five years to life for a offense of felony murder, felony murder w/armed, and burglary II w/armed.

13.  At the time plaintiff Reginald S. Puifory was convicted of this crime, and at the time authority for parole decisions for D.C. Code violators was vested in the District of Columbia Parole Board (the "Parole Board").

14.  Nineteen years after plaintiff Reginald S. Puifory's conviction, Congress enacted the National Capital Revitalization and Self-Government Improvement Act of 1997 (the "Revitalization Act"), Pub. L. No. 105-33, Section 11231, 111 Stat. 712 (1997).

15.  The Revitalization Act abolished the Parole Board, See Pub. L. No. 105-33 Section 11231(b), and directed the defendants as the Chairman and Commissioners of the Commission, to conduct parole hearings for District of Columbia Prisoners "pursuant to the parole laws and regulations of the District of Columbia," id. Section 11231(c).

16.  On August 5, 1998, the Defendants assumed the responsibility for making parole-release decisions for all eligible District of Columbia Code felons, pursuant to the Revitalization Act.

17.  In 2000, despite the requirements of the Revitalization Act that the Defendants apply the parole statutes, regulations, guidelines, and practices of the Parole Board, the Defendants published new parole rules, regulations, and guidelines that they deemed applicable to any D.C. inmates receiving an Initial Parole Hearing after August 5, 1998 (the "2000 Guidelines").  See 28 C.F.R. Section 2.80(a)(5).

18.  For inmates who had an initial parole hearing prior to August 5, 1998, the Defendants chose to apply the Parole Board guidelines.  See 28 C.F.R. Section 2.80(a)(4).  For all other inmates, some variations of the Defendants 2000 Guidelines applies, See id. Section 2.80(a)(1) and (5).

3

19. The Commission determined under the statutes, regulations, guidelines, rules, policies, practices, and customs, of the Parole Board, that plaintiff became eligible for parole on November 9, 2000. Using the Commissions' 2000 Guidelines, the Defendants conducted plaintiff's initial parole hearing in November 2000.

20. Under the Parole Board's parole regulations, policies, and practices, plaintiff had served the minimum sentence, which represents the period that an inmate needed to serve to satisfy the inmate's "accountability for the offense" itself.

21. The Defendants 2000 Guidelines, on the other hand, do not treat an inmates' "minimum sentence" as satisfying offense accountability. Instead, the Defendants automatically add to parole eligibility a period of months that an inmate presumptively must serve before considered suited for parole.

22. Furthermore, in explaining the basis for denying plaintiff's request for parole, the Defendants or their predecessors or designees have relied upon basis that are inconsistent with the Parole Board's regulations, guidelines, policies, and practices.

23. As set forth below, when the Defendants applied the Commission's 2000 Guidelines to deny plaintiff's request for parole on the ground that they do not believe plaintiff's has served enough time to address offense accountability, they significantly increased risk that plaintiff would have to serve a longer period of incarceration than  he would have had they applied the Parole Board's regulations, guidelines, policies, and practices, under which plaintiff satisfied the offense accountability after serving 324 months, in addition to the 24 months served as a set-

off to the top of an arbitrarily established guideline range of 342 months. Defendants exacerbated the problem by giving plaintiff another set-off beyond the 342 months established under the Defendant's rules. As a result, the Defendants acted in violation of the Ex Post Facto Clause of Article 1, Section 9, the Fifth and Fourteenth Amendments of the United States Constitution and federal law.

## REGULATORY FRAMEWORK FOR PAROLE DECISIONS FOR D.C. CODE INMATES AT THE TIME OF PLAINTIFF'S CONVICTION AND SENTENCING

24.  At the time that plaintiff committed the crime for which he is currently incarcerated, and at the time he served the majority (eighteen years), the Parole Board administrated their parole hearings and proceedings for D.C. Code violators in the custody of the District of Columbia.

25.  Where D.C. Code offenders were in the custody of the United States Government, the Commission administrated their parole hearings, but in such circumstances, the Commission was required to apply the Parole Board's regulations, guidelines, policies, and practices which were found by this Court to have the force and effect of law.

26.  Under the Parole Board's statutes, guidelines, rules, policies, practices, and customs, the "minimum sentence" for a crime, i.e., the period that an inmate must serve before he or she is eligible for parole, satisfied the inmate's accountability for the offenses of conviction.

27.  In conducting parole hearings and making parole determinations, the Parole Board applied mandatory guidelines, many of which were codified as municipal regulations, that carefully prescribed the method and criteria that the Parole Board used to render decisions on parole requests. As its guide for determining whether an incarcerted individual

5

would be paroled or re-paroled, the Board used the criteria set forth
in the guidelines.

28. At the time plaintiff committed the crime for which he is currently
incarcerated and at the time the plaintiff was sentenced, the Parole
Board made parole decisions for D.C. Code offenders using guidelines
it adopted in July 1972 under Title 9 published as "Special Edition"
D.C. Rules and Regulations.

29. In 1987, the Parole Board made parole decisions using mandatory
guidelines it adopted in 1985 and published in the District of Columbia
Municipal Regulations in 1987 (the "1987 Guidelines"). Further, in
1991, to ensure consistent and equitable application of the 1987
Guidelines and other parole regulations, the Parole Board adopted a
Policy Guideline defining terms used in the 1987 Guidelines (the "1991
Guidelines"). The 1991 Guidelines applied to all requests for parole
heard by the Parole Board.

30. The 1987 Guidelines required the Parole Board to calculate a Salient
Factor Score (the "SFS") for a prisoner. Based on a parole applicants
SFS, the Parole Board then calculated a "total point score," using pre
and post incarceration factors, on which it based its decision to grant
or deny parole. In "unusual circumstances," where mitigating and/or
countervailing factors applied, the Parole Board could depart from
actions indicated by an inmate's total point score.

31. In the case of an initial parole hearing, the 1987 Guidelines state
that:

> After determining an adult parole candidate's SFS score and
> after applying the pre and post incarceration factors to arrive
> at a total point score pursuant to Section 204 and Appendix 2-1,
> the Board shall take one (1) of the following actions:

6

(a)   IF POINTS=0:   Parole shall be granted at initial hearing with low level of supervision required;

(b)   IF POINTS=1:   Parole shall be granted at initial hearing with high level of supervision required;

(c)   IF POINTS=2:   Parole shall be granted at initial hearing with highest level of supervision required; or

(d)   IF POINTS=3-5:  Parole shall be denied at initial hearing and rehearing scheduled.

32.  In the case of a parole rehearing, the 1987 Guidelines state that:

In determining whether, to release on parole an adult or youth offender appearing before the Board at a parole rehearing, the Board shall take the total point score from the initial hearing and adjust that score according to the institutional record of the candidate since the last rehearing pursuant to Appendix 2-2. The Board shall take one (1) of the following actions:

(a)   IF POINTS=0-3:  Parole shall be granted at this rehearing with highest level of supervision required; or

(b)   IF POINTS=4-5:  Parole shall be denied and a rehearing date scheduled.

33.  The Parole Board is directed by the 1987 Guidelines to grant parole to an adult offender at a parole rehearing if the final adjusted score is less than four, except in "unusual circumstances."

34.  The manner in which the "institutional record of the candidate" is used to adjust the total point score from the initial hearing, as required by 28 D.C.M.R. Section 204.21, is also subject to precise guidelines adopted by the Parole Board.  The adjustment is done via "point grid" in Appendices 2-1 and 2-2 of Title 28 of the District of Columbia Municipal Regulations.  Appendix 2-1 is used to calculate an inmate's SFS and total point score at the initial parole hearing, and Appendix 2-2 is used to calculate an inmate's SFS and total point score at a parole rehearing.

35.  Pursuant to Appendices 2-1 and 2-2 of the Parole Board guidelines, in parole hearings, one point can be added to an inmates total point score for "negative institutional behavior."   In plaintiff twenty-nine years and eight months of imprisonment, however, plaintiff only received, one (1) disciplinary report (of a minor nature), and has not received a disciplinary report in over twenty-seven (27) years.  Note:  Under 28 DCMR a Disciplinary Report cannot be used adversely against an inmate when that report is beyond three (3) years old.

36.  Pursuant to Appendices 2-1 and 2-2, in parole hearings, one point can be subtracted from an inmate's total point score for "Program Achievement" and two (2) points substracted for "Superior Program Achievement" (Referred to in the 1991 Policy guidelines as "Superior Program or Work Assignment Achievement").   Superior Program Achievement means program achievement that is beyond the level expected that the prisoner might achieve ordinarily.   The Commission in its discretion may, grant more than a two (2) point deduction in execptional cases.

37.  Section VI(A)(2)(b) of the 1991 Policy guideline defines "sustained program or work assignment achievement" for purpose of Appendix 2-1 as:

> In Initial Parole Consideration cases, the following accomplishments shall ordinarily be considered as sustained program or work assignment achievement during the period of incarceration.
>
> (1)   Successful completion of one or two educational programs or vocational programs, or program levels, each of which enabled the offender to develop an academic or job-related skill, or enabled the offender to progress to a higher level of difficulty or skill in the program area.

38. Section VI(A)(2)(b) of the 1991 Policy guideline defines "sustained program or work assignment" for the purposes of Appendix 2-2: "In PAROLE RECONSIDERATION cases, the accomplishments set forth in Section VI-A-2(a) of this policy shall ordinarily be considered as sustained program or work assignment achievement where completion occurred since the preceding consideration for release on the sentence."

39. The negative institutional behavior and program achievement factors correspond to two findings requried by Appendices 2-1 and 2-2: "Has this offender committed serious infractions (adjudication under Department of Corrections due process procedures)?" and "Has this offender demonstrated sustained achievement in the area of prison program, industries or work assignments during this period of incarceration?"

40. As noted above, the Parole Board may depart from the results dictated by Section 204.19 and 204.21 only in "unusual circumstances," and when particular procedures are followed: Any parole release decision falling outside the numerically determined guideline should be explained by reference to specific aggravating or mitigating factors as stated in Appendices 2-1 and 2-2.    Section 204.22 of the District of Columbia Municipal Regulations provides that:

> The Board may, "in unusual circumstances, waive SFS and pre and post incarceration factors [which comprise the total point score] set forth in this chapter to grant or deny parole to a candidate. In that case, the board shall specify in writing those factors, which it used to depart from the strict application of the provisions of this chapter."

41. In the 1991 Policy Guideline, the Parole Board further defined the scope of its authority to deny parole for unusual circumstances when the point score indicated that parole should be granted.    Section VI(C) of the 1991 Policy Guideline, titled "FACTORS COUNTERVAILING A

RECONSIDERATION TO GRANT PAROLE," lists and defines the following to constitute "unusual circumstances" countervailing a grant of parole:

  a.  Repeated failure under parole supervision;

  b.  Current offense involve ongoing criminal behavior;

  c.  Lengthy history of criminally related alcohol abuse;

  d.  History of repetitive sophisticated criminal behavior;

  e.  Unusually extensive or serious prior record (at least five felony convictions);

  f.  Instant offense involved unusual cruelty to victims, which applied where the offense involved physical, mental, or emotional abuse beyond the degree needed to sustain a conviction on the instant offense or especially vulnerable victims such as children or elderly person; and,

  g.  Repeated or extremely serious negative institutional behavior.

**The Parole Regulations Used At Plaintiff's Parole Hearing and Rehearings.**

42.  As noted above, the Revitalization Act abolished the Parole Board and directed the Commission to conduct parole hearings for District of Columbia offenders according to the parole laws, customs and regulations of the District of Columbia.

43.  After the Commission assumed responsibility for parole hearings for D.C. Code offenders, the Commission adopted the 2000 guidelines and determined that those guidelines would apply to any D.C. Code offender that had not received an initial parole hearing as of August 5, 1998.

44.  Unlike the Parole Board Guidelines, practices, policies, and customs, the Commission's 2000 Guidelines and parole eligibility criteria do not consider the completion of a prisoner's "minimum sentence" as satisfying accountability.

Instead, the Commission and its designees have repeatedly denied D.C. inmates' requests for parole, including those of plaintiff, on the ground that they believe plaintiff has not served enough time for their offenses.

45.  To account for the nature and circumstances of parole applicants' offenses, and the history and characteristics of the prisoners, the 2000 Guidelines contain certain instructions for the rating of certain offenses.    Chapter 1 through 12, Section 2.20 of the Commission's Rules and Procedures comprise the Commission's Offense Severity Index.

46.  Like the 1987 Guidelines, the 2000 Guidelines require the Commission to determine a Salient Factor Score ("SFS") for each parole applicant, which is based upon factors such as prior convictions and adjudications, prior commitments of more than thirty (30) days, age at the time of the commission of the current offense, recent commitment-free period, status of the prisoner at the time of commission of the current offense, and history of herion or opiate dependence.  The Commission Guidelines also state that "the Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond."    Under the Commission Guidelines, the SFS becomes part of a Base Point Score ("BPS") which is comprised of the following factors:

| | | |
|---|---|---|
| Category I | - | Risk of Recidivism (Based on the Salient Factor Score); |
| Category II | - | Current or Prior Violence; |
| Category III | - | Death of Victim or High Level Violence. |

(Although the Parole Board Guidelines also require the formulation of an SFS for parole applicants, the Parole Board used the SFS only to determine the risk of recidivism on the part of the parole applicant. The Parole Board did not use the SFS as the basis for an increase in the period of imprisonment the inmate had to serve to demonstrate parole suitability).

47.  The Commission's method of parole eligibilty determination is to apply the BPS (the combined points assigned from Category I - III) to the appropriate category or offense behavior, then to add the corresponding number of months to a parole applicants minimum term/sentence (the number of months an inmate must serve before becoming eligible for parole), based on the offense severity index.  The months added to the parole applicant's minimum sentence based on the BPS are considered the "Base Guideline Range" and are considered by the Commission and its designees as the additional time of imprisonment the inmate must serve above the months required for parole eligibility to be qualified for parole.

48.  Pursuant to Section 2.80(e)(1) of the Commission's Guidelines, the Commission "shall assess whether the prisoner has demonstrated ordinary or superior achievement in the area of prison programs, industries, or work assignments while under confinement for the current offense. "Under this structure, the Commission has the sole discretion of determining whether the parole applicant's work and program achievements are to be considered "ordinary" or "superior".  Per the Commission's Guidelines, "if superior program achievement is found, the award for superior program achievement shall be one third of the number of months during which the prisoner demonstrated superior program achievement."  The Parole Board Guidelines, however, use an objective standard to reward "Sustained

Program Achievement or Work Assignment Achievement" and an award is granted for what the Commission might consider "ordinary" achievement.

49.  The "Total Guideline Range" (the ultimate determination of time to be served to establish presumptive suitability for parole pursuant to the Commission's guidelines structure) is reached by adding: the minimum of the base point guideline range, the number of months required by the prisoner's parole eligibility date, and the minimum of the guideline range for disciplinary infractions, if applicable.  Then subtract the award for superior program achievement, if applicable.

50.  Pursuant to Section 2.80(a)(4) of the Commission's Guidelines regarding D.C. Code offenders, the Commission's Guidelines apply to "all prisoners who are given initial parole hearings on or after August 5, 1998.  For prisoners whose initial hearings were held prior to August 5, 1998, the Commission shall render it decisions by reference, the guidelines applied by the D.C. Board of parole."  Thus, regardless of the guidelines, rules, practices and customs in effect when an offender committed his or her crime and was sentenced, the offender's fitness for parole may hinge arbitrarily upon the date of his or her initial parole hearing.

### Plaintiff's Parole Hearings and  Defendant's Use of the 2000 Guidelines

51.  When plaintiff became eligible for parole in November 2000, and had his initial parole hearing November 2000, Defendants or their predecessors assigned a hearing examiner, to conduct plaintiff's initial parole hearing.

13

52. Despite the fact that plaintiff had been convicted and sentenced at
the time the Parole Board applied it's Title 9 Parole Regulations
(DCRR Title 9, July 24, 1972 and February 15, 1985 at OCR 940 and
32 DCR 1511), and during the time the Parole Baord changed to the
mandatory 1987 Guidelines, defendants and their predecessors instructed
the Hearing Examiner to use the Defendant's 2000 Guidelines in evaluating
plaintiff's request for parole.

53.  Under the 2000 Guidelines, plaintiff's Salient Factor Score at his
initial hearing, rehearing, and second rehearing was four (4), and his
Base Point Score was eight(8).  Plaintiff's SFS was based on him having
a prior conviction, prior commitments of thirty (30) days, his age at
the time of the offense was twenty-one (21) years old, and the fact
that plaintiff was on parole at the time of the offense.  Plaintiff's
SFS placed him in the "Fair risk" category.   Plaintiff's Base Point
Score under the Federal 2000 Guidelines increased the time of incarceration
plaintiff was expected to serve from the minimum term ("accountability
for the crime under the 1987 Guidelines"), to an additional 72-96 months,
indicating that plaintiff should serve between 324 months (his minimum
and 342 months (the maximum additional months above the range by the
2000 Guidelines).

54. At his initial hearing, despite the fact that the examiner awarded
plaintiff a deduction of two (2) points for Superior Program Achievement,
the examiner adjusted plaintiff's Total Point Score eight (8) to six (6),
and zero (0) for not having a Negative Institutional Behavior over a
period of twenty-three (23) years.

Consequently, plaintiff was denied parole and a twenty-four (24) months
rehearing date was set for September 2002.  Under the 1987 Guidelines
[IF POINT=3-5:  Parole shall be denied at initial hearing and rehearing
scheduled.]

55.  In September 2002, the Defendant's conducted plaintiff rehearing,
the examiner awarded plaintiff a deduction of one (1) point for
Ordinary Program Achievement, again the examiner adjusted plaintiff's
Total Point Score six (6) to five (5), and zero (0) for not having a
Negative Institutional Behavior.  Plaintiff was denied parole and a
twenty-four (24) months set-off for rehearing was schedule for
September 2004.  Under the 1987 Guidelines [IF POINTS=4-5:  Parole
shall be denied and a rehearing date schedule].

56.  On September 2004, the Defendant's conducted plaintiff's second
rehearing, the examiner anomalous from the deduction of the Total Point
Score by adopting and enacting a new procedure [Conversion] of the 2000
Guidelines, that arbitrarily disadvange plaintiff's suitable  for
parole, the Defendant's 2000 Guidelines Conversion indicate that
plaintiff will do additional time beyond the minimum term that suffice
"accountability," the Defendant's instructed examiner under it's 2000
Guielines Conversion to replace the Total Point Score and apply the
Total Guideline Range, during that time of the hearing plaintiff had
the minimum term of 324 months credited for incarceration in respect of
the "total guideline range" 324-342 months.  Plaintiff also received
six (6) months deduction from the total guideline range  for Superior
Program Achievement, and zero (0) for not having a Negative Institutional
Behavior.  Again plaintiff was denied parole at the second rehearing,

and a twenty-four (24) months Reconsideration Hearing was set for
September 2006.   Thus, the Defendant's did not "state with particularity
the reasons" for denial of parole or for exceeding above the CURRENT
TOTAL GUIDELINE RANGE on Notice of Action.

57.  In July 24, 2006, the Reconsideration Hearing was voided and amended.
The Defendant's directive [ORDER] was definitive and instructed the
Examiner to conduct a RECONSIDERATION Hearing in twenty-four (24) months
[September 2006].   Instead, the Hearing Examiner Mr. Howard inordinately
ignored the order of his superiors.  Defendant's next hearing was
schedule for August 2007.  Plaintiff will have served thirty-six (36)
months instead of twenty-four (24) months, which is twelve (12) additional
months, not in accordance with the order signatured on September 16,
2004.   The Notice of Action issued to plaintiff by the Defendants
indicated that the decision was not appealable.

58.  Furthermore, despite the fact that plaitiff served the arbitrary
347 months above the range, the Defendant's Guidelines indicated that
plaintiff should have been paroled, Defendant's ignored it's own
guidelines and denied plaintiff's request for parole, the Defendant's
Noted:  Plaintiff have been found eligible for consideration under the
Commission's presumptive release date policy at 28 C.F.R. Section 2.75
(effective January 4, 2001).

59.  Defendant's alleged basis for denying plaintiff's request for parole
at his July 2006 Reconsideration Hearing, are not recognizable under the
1987 Guideline, and undermine the fundamental parole scheme of the
Parole Board Guidelines.

60.  In reaching each of their determinations regarding plaintiff's request for parole, the Defendants and their designees have relied upon the belief that plaintiff had not served sufficient time to satisfy accountability for the offense he committed.  Thus, because the Defendants and their designees have felt plaintiff needed to serve a longer period of incarceration to satisfy accountability for the offense he committed, they have ignored the objective factors of its own 2000 Guidelines which indicated plaintiff should be paroled, they have completely disregarded core factors of the 1987 Guidelines that set accountability for the crime at  the minimum term or parole eligible.

61.  Despite the fact that plaintiff was eligible for parole in September 2004, and had an exemplary prison record, plaintiff will have served 84 additional months, for a crime the Court intended for plaintiff to serve twenty-five (25) years [300 months], instead of the thirty (30) years [360 months] designated by the defendants.

### Plaintiff's Rights Under the Parole Board's 1987 Guidelines

62.  If plaintiff had been evaluated under D.C. Guidelines, his SFS at his Initial hearing [November 2000] would have been five (5) "moderate risk" and his "total point score" would have been four (4).

63.  Under the Parole Board's 1987 Guidelines, if the grid point score equal two or less, "parole shall be granted" at the initial hearing, i.e., execpt in "unusual circumstances."  See 28 D.C.M.R. Sections 204.19 and 204.22.

64.  If plaintiff Rehearing [September 2002] under the 1987 Guidelines, his SFS would again been five (5), and his "total point score" would have been adjusted from four (4) to three (3).  Plaintiff would received

an automatic minus-one (-1) point at each subsequent rehearing, reducting the point score to three (3).

65.  Again under the 1987 Guidelines  if the grid point score equal three or less, "parole shall be granted" at the rehearing with the highest level of supervison,i.e., except unless "unusual circumstances" was present.  See 28 D.C.M.R. Section 204.21 and 204.22.  The phrase "unusual circumstances" means the presence of one or more specifically enumerated countervailing factors.  28 D.C.M.R. §§204.1, 204.22.  In the absence of these specific factors parole "shall be granted."

66.  Under the Parole scheme of the Parole Board's regulations, practices, and guidelines, plaintiff satisfied the accountability factors for his offense after serving 300 months and therefore was eligible for parole as of September 2004.

67.  The Defendant's application of the 2000 Guidelines, rather than the 1987 and 1991 Policy Guidelines, and their repeated denials of plaintiff's request for parole on the ground that plaintiff has not served sufficient time to account for his crime, and that the guidelines used by the Parole Board did not fully capture the totality of the crime, which have caused plaintiff to serve more time than would have been expected under the 1987 Guidelines.  Consequently, Defendant's actions, both direct and indirect have resulted in the significant risk of prolonging plaintiff's incarceration, and therefore constitute an Ex Post Facto violation of the United States Constitution.

Count 1:  The Defendants Violated the Ex Post Facto Clause of
          the United States Constitution.

68.  Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

69.  The retroactive application of a new law, resulting in a significant
risk of prolonging an inmate's sentence, than what would have resulted
under the guidelines in effect when the inmate was convicted, constitutes
a violation of the Ex Post Facto Clause of the United States Constitution.

70.  Prisoners are entitled to know the range of punishments available
at the time of sentencing, and during the adjudication of their cases.
The Ex Post Facto Clause assures that individuals are given fair warning
of what actions will be punished and the degree to which they will be
punished.

71.  Pursuant to the provisions of the 1987 Guidelines, which governed
parole decisions during the majority of plaintiff's incarceration,
and which constrained parole decisions to a formula that guided official
discretion, plaintiff should have been granted parole at his second
rehearing, "subject to the highest level or supervision."

72.  Furthermore, per Section IV (C) (7) of the Parole Board's 1991
Policy Guidelines, none of the "unusual circumstances" identified by
the Parole Board as a basis for departing from the guidelines indicated
a course of action other than the granting of plaintiff's parole request.

73.  In addition, Section 204.8 of Title 28 D.C.M.R. state in relevant
part, "an aggregate term of imprisonment, whether concurrent or
consecutive is treated as a single commitment," one of the premises
for 204.8 is to ensure that after an offender served the aggregated
term, accountability for the entire crime was met, and could be
adjudicated on the basis of a single commitment.

74.  Under the 2000 Guidelines, Defendants and their designees denied
plaintiff's request for parole and significantly increased the risk
that his incarceration would be prolonged and he would serve a longer

19

period than he would have had the Parole Board's regulations been
applied by: immediately increasing the period the Parole Board  considered
as satisfying his offense accountabilty, i.e., plaintiff's parole
eligibility date by 72-96 additional months, 2) failing to give plaintiff
an explanatory reason for exceeding the "Total Guideline Range" on
Notice of Action, 3) double punishing plaintiff for a "prior offense"
already taken into account by the Parole Board regulations, practices,
and customs.   These factors and actions by the Defendants significantly
increased the risk that plaintiff would be incarcerated longer, and
were in violation of the Ex Post Facto Clause of the United States
Constitution.

75.  Furthermore, by ignoring the Parole Board's Policy and practice of
considering plaintiff's parole eligibilty date September 2002, as
satisfying plaintiff's accountability for his offense, the Defendants
have significantly increased the risk that plaintiff will be incarcerated
longer than he would have been had the Parole Board's regulations and
practices been applied.

Count II:  Violation of Plaintiff's Fifth Amendment and Fourteenth
           Amendment Due Process Rights;

           The Commissions' Denial of Plaintiff's Programs and Work
           Achievement Violated His Due Process Rights.

76.  Plaintiff repeats and re-alleges the allegations set forth in
paragraphs 1 through 75 as if fully set forth herein.

77.  Plaintiff has a constitutional protected interest in receiving
credit for his programs and work achievement as provided for under the
1987 Guidelines, the 1991 Policy Guidelines, and the Commission's own

2000 Guidelines.  The Defendants did not credit plaintiff for such achievements for the period between plaintiff's initial, rehearing, and second rehearing, November 2000, September 2002, and September 2004 respectively.

78.  As a result, Defendants denied plaintiff his consitutional rights to a fair review process.

### Relief Requested

Wherefore, Plaintiff Reginald S. Puifory respectfully request that this Court:

1. require the Defendants to apply and comply with the Parole Board's regulations, guidelines, rules, policies, practices, and customs, including, but not limited to the 1987 Guidelines and the 1991 Policy Guidelines to plaintiff Reginald S. Puifory;

2. deem that plaintiff's service of this sentence to his parole eligibility date satisfied offense accountability for parole consideration purposes;

3. require the Defendants to reconsider the decision rendered on on plaintiff's applications for parole based on the existing record in a manner consistent with the D.C. Parole Board's 1987 Guidelines, 1991 Policy Guidelines, and policies, federal regulations, the Constitution and all other requirements of law;

4. grant such order and further relief as the Court deems appropriate.


Respectfully Submitted,

*Reginald Puifory*

Reginald S. Puifory, pro se
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

## CIVIL COVER SHEET

**I (a) PLAINTIFFS**

Reginald S. Puifory, pro se
Fed. Reg. No. 10597-007
USP Lewisburg, P.O. Box 1000
Lewisburg, PA 17837                    88886

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Reginald S. Puifory, pro se
Fed. Reg. No. 10597-007
USP Lewisburg, P.O. Box 1000
Lewisburg, PA 17837

**DEFENDANTS**

Edward R. Reilly, Jr., Chairman of the United States Parole Commission
Cranston J. Mitchelle, Commissioner of the United States Parole Commission
Deborah A. Spagnoli, Commissioner of the United States Parole Commission
Patricia K. Cushwa, Commissioner of the United States Parole Commission
Isaac Fulwood, Jr., Commissioners of the United States Parole Commission

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:07-cv-01007
Assigned To : Lamberth, Royce C.
Assign. Date : 6/5/2007
Description: Civil Rights-Non Employ.

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- ⊗ 2 U.S. Government Defendant
- O 3 Federal Question (U.S. Government Not a Party)
- O 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

---

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**O A. Antitrust**

- ☐ 410 Antitrust

**O B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**O C. Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**O D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**O E. General Civil (Other)**       **OR**       **O F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(7)

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ◉ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C., Sections 1331 and 1343 (a) (3), (a) (4), (b) (1), and 42 U.S.C 1983

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $** _____    Check YES only if demanded in complaint<br>**JURY DEMAND:**    YES ☐    NO ⊗

**VIII. RELATED CASE(S) IF ANY** A.F.    (See instruction)    YES ☐    NO ⊗    If yes, please complete related case form.

DATE **5/5/07**    SIGNATURE OF ATTORNEY OF RECORD    *Reginald Rufory*

**6-5-07**    INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44<br>Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.