UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REGINALD S. PUIFORY,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　) Civil Action No. 07-CV-01007-RCL
　　　　　　　　　　　　　　　　)
EDWARD F. REILLY, JR., et al.　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　 )

RECEIVED
OCT 3 1 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

NOW COMES, Reginald S. Puifory, pro se, Plaintiff hereby submits this memorandum of Points and Authorities in support of his Response to Defedants' Motion to Dismiss. Specifically, Plaintiff moves to dismiss defendants memorandum pursuant to Fed. R. Civ. P. 12(b)(3) and (6). For the reasons set forth below, the Plaintiff respectfully requests that the Court deny defendants' Motion to Dismiss or Alternatively Summary Judgment in it's entirely.

## BACKGROUND

Reginald S. Puifory, pro se, is currently housed at the U.S.P., Lewisburg, Pennsylvania. Compl. at 1, ¶5. On March 10, 1978, Plaintiff was sentenced to twenty-five years to life for felony murder while armed and burglary while armed. Compl. at 1, ¶12.

## ARGUMENT

### A.   Venue Is Proper

Plaintiff asserts that, 28 U.S.C. §1391(b), is the proper and appropriate venue to bring his claims against officers, such as the defendants; wherein jurisdiction is not founded solely on diversity

of citizenship, or any agency of the United States, provides that venue is proper in one of these three locations: (1) whereas any defendant resides, (2) whereas a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) whereas in which any defendant may be found, if there is no district in which the action may otherwise be brought. Lamont v. Haig, 590 F.2d 1124, 1134 n. 62 (D.C. Cir. 1978)

Plaintiff argues, that the National Capital Revilatization and Self-Government Improvement Act of 1997, is the legislation passed, which the Parole Commission alleges gave them the authority to change the amended D.C. Parole Statutes, and apply them retroactively. Therefore, venue is proper in that the Parole Commission conducts its business relative to its authority in the District of Columbia, nationally, and the guidelines were tailored for D.C. Code Offenders. See 28 C.F.R. §2.65.

Plaintiff's offense occurred in the District of Columbia, was convicted and sentenced in Superior Court of the District of Columbia. Thus, plaintiff's Initial parole hearing was held at D.C. Department of Corrections, Central Facility, Lorton, Virginia, on November 2000, by a representive [examiner] of the parole Commission. Though, Central Facility is located at Lorton, Virgina, it is a satellite district under the District of Columbia, also, the Parole Commission's office is in Chevy Chase, Maryland [suite 420], thereto it acts as a satellite district under both administrative agencies, such as the United States Attorney General and United States Department of Justice,

which situs in the District of Columbia; a Metropolitan district. Stokes v. U.S. Parole Commission, 374 F.3d 1235, 1283, n.(D.C. Cir. 2003); Crawford v. Jackson, 323 F.3d 123, 125 (D.C. Cir. 2003)

Furthermore, the defendants takes the position that it is not amenable to suit under 42 U.S.C. §1983, because "it does not act under color of state law." Not so with respect to a D.C. Prisoners, Fletcher challenges actions taken by the defendants pursuant to the D.C. Revitalization Act, §1983, provides for recovery of a Constitutional right "under color of any Statute. . . of any State or Territory or the District of Columbia," 42 U.S.C. §1983. Because the D.C. Revitalization Act is such a statute, we have no doubt the defendant members of the United States Parole Commission are amenable to suit under §1983, for actions taken pursuant to that Act. See Fletcher v. District of Columbia, 481 F. Supp.2d. 156 (D.C. Cir. 2007)

Further, for all intents and purposes the residence of a public officer under Section 1391, means his official not actual residence, See Butterworth v. Hill, 114 U.S. 128, 5 S.Ct. 796, 29 L.Ed. 119 (1885). Here, especially in this case, the Parole Commission operates under delegate authority for the United States Attorney General and United States Department of Justice, whereas both governing institutions are situated in the District of Columbia. It is beyond cavil that the official residence of state officials is determinative for purposes of venue. Verity, the Court has stated: "where a public official is a party to an action in his official capacity, he resides in the judicial district where he maintains his official residence, that is, where he performs his official duties. See O'Neill v. Battisti, 472 F.2d 789, 791 (6th Cir. 1972)(quoting 1 Moore's Federal Practice, pp.

1486-88)(emphasis added).

Defendants claims this suit should be dismissed on the premise of improper venue. In this case, 28 U.S.C. §1391(e), is unlike the governing Statute, 28 U.S.C. §1391(b), which is distinctively among the most restrictive venue provisions; Congress ordained: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants resides, or in which the claim arose. See Lamont v. Haig, 590 F.2d 1124(1978).

Consonantly, with these principles, Plaintiff has delineated that, Section 1391(b), is the proper venue and provision. This claim meets the general prosepective of law, and is properly situs in the judicial district of the District Court for the District of Columbia. Therefore, defendants argument as it regards venue must fail, as dictated by statutes and case law.

B.  **Plaintiff States a Claim and Relief Can be Granted**

In resolving a motion to dismiss, pursuant to Rule 12(b)(6), the Court must construe the factual allegations in the complaint in the light most favorable to Plaintiff, and accept the legal conclusions or allegations with factual support in the allegations made. Bell Atl. Corp. v. Towmbly, 127 S.Ct. 1955, 1965(2007). The Court is limited to consider facts alleged in this motion set forth by law.

The Ex Post Facto Clause of the Constitution prohibits the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990); see Garner v. Jones, 529 U.S. 244 (2000). In Garner, the Supreme Court held that the Ex Post Facto Clause is violated when a parole authority adopts a retroactive

procedural change that created "'a sufficient risk of increasing the measure of punishment attached to the cover crime.'" Id. at 250, (quoting) California Dept. of Corrections v. Morales, 514 U.S. 499, 509(1995).

Here, the rule or procedural change has significantly effected Plaintiff by removing him from a class which was parolable to a class where Plaintiff was denied parole. Further, the USPC, §2.80 guidelines state, "prisoners given initial hearings under the guidelines in effect from August 5, 1998 throught December 3, 2000 (the guidelines formerly found in 28 C.F.R. §2.80, Appendix to §2.80(2000)), the guidelines in paragraph (b)-(n) of this section shall be applied retroactively subject to the provisions of paragraph (o)." This new rule placed Plaintiff [outside] the guidelines as a [More Serious Parole Risk: Unusual extensive and Serious Prior Record], the application of the new rule will result in a longer period of incarceration than under the previous rule, the Ex Post Facto Clause is implicated, Id. at 255.

Moreover, the 1991 Policy Guidelines, (C)(4)(a)(5) state, "History of Repetitive Sophisticated Criminal Behavior consists of three (3) or more convictions, including the current conviction, for; Serious crimes involving premeditation or methodical; "Unusual Extensive or Serious Prior Record consists of at least five (5) felony convictions for the commission, or attempted commission; and as the USPC guidelines, Decision Above the Guidelines: More Serious Risk (Unusual extensive and Serious Prior Record-than indicated by the base point score). The USPC guidelines instruct in practicality, a departure under [provision] may be considered [only] when both of the following are present: (i) the [Plaintiff] has at least two prior revocations on the <u>current</u> sentence or consecutive/concurrent sentence(s); and (ii) the total

number of prior commitments is more than nine. The impact in regards to (D.C. & USPC) statutes, rules, policies, procedures, and guidelines are stricted in its language to measure specific factors before a [decision] to exceed above the numerical guideline range.

During the assessment of Plaintiff's Salient factor Score, he was not placed in the poorest risk, but the moderate range, therefore, by both guidelines, Plaintiff's SFS is four (4), equivent to moderate and fair on both scales, whereas, opposed to (More Serious Parole Risk-Serious Parole Risk-Poorer risk) assessment. Althougth the Parole Board's guidelines merely assist the Board in the exercise of its discretion , Hall v. Henderson, 672 A.2d 1047(D.C. 1996); the failure to follow relevant procedures may result in an abuse of discretion, Bennett v. Ridley, 633 A.2d 824, 826 (D.C. 1994); See Stevens v. Quick Supra; Hall v. Henderson, 672 A.2d at 1055.

The USPC erred in its failure to explain the imposition of a set-off outside the guidelines, Hammond, 726 A.2d at 900, and which was based upon erroneous information. The 1991 Policy Guidelines, were formulated to instruct and interpret the Board's use of parole statutes, and to establish consistency in practice, consequently, the changes from the Board's practice to those of the revised guidelines by the USPC created a significant risk of increased punishment and a longer period of incarceration, Garner, 529 U.S. at 256.

Therefore, the guidelines and regulations used by the Board differ from the guidelines and regulations used by, making a clear distinction that the two (2) uses are not identical, and establishes that the guidelines and regulations utilized by the USPC are retrospective by

treating Plaintiff harsher than the guidelines and policise used by the Board. In all liklihood the USPC guidelines have resulted in Plaintiff serving a long period of incarceration.

Defendants' argument 2007, was only occasion that a ruling outside the guideline was made is erronious. The USPC departed and denied Plaintiff parole on September 2004, during that time the USPC imposition of the 2000 guidelines was significant, anomalous 28 C.F.R. §2.80, Appendix to §2.80(2000) guidelines that deducted points from the "Total Point Score" in 2000, and 2002, by the USPC adopting and enacting a new rule [conversion] 28 C.F.R. §2.80(2003) guidelines "Total Guideline Range" which disadvantages Plaintiff's suitability for parole at any parole hearing. The new rule that were applied to Plaintiff "make the obstacles to parole suitability more burdensome and increase the liklihood of prolonging Plaintiff's incarceration. Dobbert v. Florida, Supra, 432 U.S. at 292, 97 S.Ct. at 2297.

The mechanical aspect of 28 C.F.R. §2.80(o)(2003), state, "conversion rules for retroactive application of the §2.80 guidelines. When the guidelines of this section are retroactively applied, the following conversion rules shall be used." Whereas, the amended rule will lengthen Plaintiff's punishment. The new amendment operates as an Ex Post Facto law and is therefore unconstitutional as applied to Plaintiff. Lyons v. Mendez, 303 F.2d 285, (3rd Cir. 2002), the application of the new statute offended the Ex Post Facto clause because the "standard of punishment adopted by the new statute is more onerous than that of the old." Lindsey v. Washington, Supra, 301 U.S. at 401, 57 S.Ct. at 799, 81 L.Ed. 1182 (1937).

The USPC acted contrary to the parole Board's Guidelines in denying Plaintiff's parole. The USPC, departed from the unabiguous requirements of federal law and regulations that Direct it to apply the Parole Board's guidelines, as the USPC's guidelines had already been rejected by the D.C. Board, Cosgrove v. Thornburgh, 703 F.Supp. 995 (D.C. Cir. 1988).

Under the Revitalization Act and the USPC's own regulations, the Commission "shall use the criteria" in the 1987 Guidelines for "determining whether an incarcerated individual shall be paroled," 28 D.C.M.R. §204.1. See Revitalization Act, Pub. L. No. 105-33 §§ 11231(c); 28 C.F.R. §2.80(e). The 1987 Guidelines specifically require the USPC to explain "[a]ny parole release decision falling outside the numerically determined guideline . . . by reference to the specific aggravating or mitigating factors as stated in Appendix 2-1 and 2-2" of the guidelines. 28 D.C.M.R. §204.1.

The 1991 Policy Guidelines identify and define the Countervailing factors that the Commission may use to depart from the guidelines and deny parole: "Repeated Failure Under Parole Supervision," "Ongoing Criminal Behavior," "Lengthy History of Criminally-Related Alcohol Abuse," "Unusually Extensive or Serious Negative Institutional Behavior," "Lengthy History of Criminally-Related Substance Abuse," "Absence of Community Resource Which Ensure Satety of the Community." See VI(C). If the criteria set forth in the 1991 Policy Guideline for these factors are not met, the USPC cannot show "Unusual Circumstances" and, therefore, must grant parole.

In 2004, 2006, and 2007, the USPC departed from its own guidelines and the 1987 Guidelines, that indicated the USPC should grant Plaintiff parole.

8

Plaintiff became suited for parole following and serving the prescribed guideline range of 324-342 months, however, Plaintiff was set-off again and served 363 months. The criteria used in both instances were identical and had been to first establish and to exceed the guideline. See Romano v. Baer, 805 F.2d 268, Alessi v. Thomas, 650 F.Supp. 589, 595 (S.D.N.Y. 1985)(quoting Alessi v. Quinlan, 563 F.Supp. 911, 912 (S.D.N.Y. 1982), it engages in "double counting," which is an abuse of the USPC's discretion. "[C]ase law in the . . . area of initial parole determinations states that 'to justify a decision outside the guidelines, the reasons given in the notice of action must stand apart from the factors already considered in determining the severity rating."' Id. at 594 (citation omitted).

Although, the 1987 Guidelines do not contain an offense severity dimension, nor does it prescribe ranges of months to be served. Rather, the D.C. guidelines use the minimum term of the sentence as the basic measure of accountability for the offense, and apply a point score system which includes the Salient Factor Score and other readily ascertainable items to determine whether or not the prisoner is suitable for parole upon the completion of the minimum term . . . The D.C. Board does not focus upon considerations of quantity (e.g., the amount of drugs or money involved in the crime or the number of multiple separate offenses) as the USPC does, which creates a harsher suitability criteria.

The D.C. Board appears to consider such factors as already accounted for by the minimum term or terms. See Memo 8/21/92, from General Counsel to Chairman of USPC.

Indeed, the D.C. Board guidelines, utilizes four factors to determine suitability for parole: two pre-incarceration factors and two post-incarceration factors. The USPC uses only two pre-incarceration factors, (quoting) Cosgrove v. Thornburgh, 703 F.Supp. 995, 1003(D.D.C. 1988), though the USPC give tacit attention to post-incarceration-machination factor. Also, the use of months reduction as prescribed by the USPC's §2.80(k), does not impact Plaintiff's range, as its use is tacit at best. The Recommendation on two occasions on Feb. 28, 2006, and July 24, 2007, were both overruled using no new information factors already considered in earlier parole hearings, again engaging in impremissible "double counting," Romano v. Baer, 805 F.2d 268.

Under the tenets of the 1987 Guidelines used by the D.C. Board of Parole, those guidelines prescribed a specific form for parole determination, thus limited the discretion of the Board. the 1987 rules created a specific liberty interest by its use of their release criteria, and their use of mandatory language, e.g., "If $\underline{3}$ then parole "shall" be granted." Greenholtz v. Nebraska, 442 U.S. 1. 60 L.Ed.2d 668; Morrissey v. Brewer, 408 U.S. at 481, L.Ed.2d 484, 92 S.Ct. 2593; Wolff v. McDonald, 418 U.S. 539, 41 L.Ed.2d 935, 94 S.Ct. 2963. The only exception to this criteria, as defined by the 1991, Weaver v. Graham, 450 U.S. 24, 33, 67 L.Ed.2d 17, 101 S.Ct. 960 (1981) Policy Guidelines is the "Unusual Circumstances," Greenholtz v. Nebraska, 442 U.S. 1, 60 L.Ed.2d 668, category found in Appendix 2-2 of the 1987 guidelines.

The formula operated: 1) when an offerder's Base Score reached a particular numerical status, the the Board would turn to Appendix 2-2 to determine if the offender was subject to the tenets of that

criteria, 2) If an offender did not meet any of the criteria prescribed in Appendix 2-2, then the Board would grant parole subject to low, high, or the highest possible supervision. Greenholtz v. Nebraska, 442 U.S. 1, 60 L.Ed.2d 668.

Under the Rules and Regulations of the 1987 Guidelines and the 1991 Policy Guidelines the Board limited its' discretion and the exercise thereof to the formula set forth by rules, regulations, and policy. The use of mandatory terms like "shall" created liberty interests because that language both activated an entitlement to parole, and gave a clear specific course for that consideration. Greeholtz v. Nebraska, 442 U.S. 1, 60 L.Ed.2d 668.

The USPC's amendments and revision eliminated liberty interests and expanded discretion beyond the scope prescribed by the 1987 Guidelines and the 1991 Policy Guidelines.

The changes made by the USPC are in violation of the U.S. Constitution's ex post facto restrictions, and undermine plaintiff's liberty interests by expanding its authority beyond the scope of what was intended by D.C. Laws, thereby making its changes, amendments and revision's to the 1987 guidelines harsher and more burdensome than those in place before the changes. Subsequently, Plaintiff's rights to be free from new punishments, enacted and applied retrospectively have been violated. As these changes by the USPC expand discretion beyond the limits set by the 1987 Guidelines, and permit Plaintiff to be punished and incarceration beyond what was intended by the 1987 guidelines.

11

For the above and aforementioned reasons defendants Motion for Dismissal or in the Alternative Summary Judgment must fail. The defendants should be compelled to answer the complaint, as defendants' argument is without merit, and Plaintiff has proved that the changes do significantly increase the risk of prologing his incarceration beyond the scope intended by the previous (1987 Guidelines) parole scheme of D.C. authorities.

Plaintiff has made out a prima facie case that his rights under the Ex Post Facto Clause have been violated, because revisions made by the USPC subject him to a wider range of punishment and factor, not used by the Board's paroling scheme, and these changes broaden the scope of authority discretion, far beyond the scope of the Board's regime which limited discretion to a formula defind by its' own 1991 Policy Guidelines. Under Garner and Fletcher II Plaintiff is entitled to a searching comparison of the old and new regimes in order to determine whether the USPC's application of federal parole regulations at Plaintiff's parole hearing created a significant risk that he will be subject to a lengthier incarceration than he would have been had the Commission adhered to the rules and practices of the D.C. Board. Fletcher v. Reilly, 433 F.3d 867, 867 (D.C. Cir. 2006)(Fletcher III).

Dated: October 25, 2007

                                                        Respectfully submitted,

                                                        Reginald S. Puifory, pro se
                                                        Fed. No. 10597-007
                                                        P.O. Box 1000
                                                        Lewisburg, PA 17837

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of October, 2007, I cause service of the foregoing Plaintiff's Response Motion to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment to be made on the Defendants via first class mail:

> Kenneth Adebonojo
> Assist. U.S. Attorney
> 555 Fourth Street, N.W., Room 4210
> Washington, D.C. 20530

> Respectfully submitted,
>
> /s/ Reginald S. Puifory
> Reginald S. Puifory, pro se
> Fed. No. 10597-007
> USP Lewisburg
> P.O. Box 1000
> Lewisburg, PA 17837

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REGINALD S. PUIFORY, )
)
      Plaintiff, )
)
v. ) Civil Action No. 07-cv-01007-RCL
)
EDWARD F. REILLY, JR., et al. )
)
      Defendants. )
)

### ORDER

This matter having come before this Court on Plaintiff's Response Motion to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, it is hereby;

**ORDERED** that Plaintiff's motion is **GRANDED**. It is further

**ORDERED** that Plaintiff shall file his Response Motion on or before October 26, 2007.

**SO ORDERED** this _____ day of _____, 200___.

_____
United States District Court Judge