UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **REGINALD PUIFORY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 07-cv-1007 (RCL) |
| | ) | |
| **EDWARD F. REILLY, Jr., Chairman,** | ) | |
| **U.S. Parole Commission, et al.** | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGEMENT**

Reginald S. Puifory, *pro se* ("Plaintiff"), Register Number 10595-007, opposes the Motion for Summary Judgment filed by Edward F. Reilly, Cranston Mitchell, Patricia K. Cushwa, Deborah Spagnoli and Isaac Fulwood, Jr. ("Defendants"). Plaintiff alleges that the application of the United States Parole Commission's ("Commission") regulations pertaining to his parole denials instead of the defunct District of Columbia Board of Parole's ("Parole Board") guidelines, violates his constitutional rights under the *ex post facto* clause. Specifically, in his opposition to Defendants' Motion for Summary Judgment, Plaintiff insists that venue is proper under 28 U.S.C. 1391(b) and that the Commission's updated guidelines "remov[e] him from a class which was parolable [sic] to a class where [he] was denied parole...this new rule placed Plaintiff outside the guidelines...." *Pl. Opp. Br.* at 5. "The new rule[s] that were applied to Plaintiff make the obstacles to parole suitability more burdensome...." *Id.* at 7. Plaintiff also argues that the Commission failed "to explain the imposition of a set off outside the guidelines." *Id.* at 6.

Keeping in mind that Plaintiff is required to plead facts that entitle him to belief beyond mere speculation, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) (upholding dismissal of a complaint where Plaintiff failed to allege sufficient facts to satisfy elements of an Antitrust cause of action), Defendants contend that Plaintiff fails to allege sufficient facts to state a claim that Defendants' actions "created a *significant* risk of prolonging [his] incarceration." *Garner v. Jones*, 529 U.S. 244, 251 (2000)[emphasis added]. The clear facts from the record show that it was not the new rule that placed Plaintiff outside the guidelines, as he suggests, but his own involvement in taking two lives. The Parole Board and the Commission, like their counterparts around the country, are conferred with discretion to grant parole when doing so is consistent with the best interest of the larger society as well as the applicants. Although both the Parole Board and Commission used numerical factors as proxies for an applicant's risk of recidivism, neither was bound to make decisions based on numerical factors. Accordingly, it is virtually impossible for Plaintiff to demonstrate that, in light of the two homicides he was involved in, he would have received a more favorable decision from the Parole Board versus the Commission. Other than his conclusory legal pronouncements set forth above, which are insufficient under *Twombly*, Plaintiff has not pled sufficient facts to meet even the minimal legal threshold. Nor has he demonstrated that venue is proper in this District.

Regarding venue, Plaintiff's suit against Defendants in their official capacities, *Pl. Compl.* ¶¶6-11, is essentially a suit against the Commission. Therefore, the proper venue provision is 28 U.S.C. 1391(e) not 1391(b) as Plaintiff suggests. Under the former provision, an action may be brought (1) where a defendant in the action resides; (2) where a substantial part of the events giving rise to the claim arose; or (3) where the plaintiff resides. *In re Gene M.*

*Munson*, 2003 U.S. Appeal Lexis 11734, *2 (D.C. Cir. 2003) (holding that venue was proper in Virginia because a substantial part of the events occurred there and the Agency's office was located there). Here, the Commission's offices are in Maryland and that is where a substantial part of the decisions were made. Alternatively, under the rule, this action may be properly venued in the Western District of Pennsylvania where Plaintiff is incarcerated. Plaintiff's averments that the Commission is part of the Department of Justice, which can be found in this District, or that legislation empowering the Commission to decide his parole eligibility and suitability was passed in this District are unavailing. Plaintiff has failed to plead facts, as he is required to do, that would justify venue in this District.

  Furthermore, Plaintiff has failed to state a claim for which relief can be granted because he has not pled facts that remotely suggest a significant enough difference between the Parole Board and Commission's guidelines to meet the legal threshold. There is no question that, like the Commission, the Parole Board had broad discretion to grant or deny parole. *Ellis v. District of Columbia*, 84 F.3d 1413, 1414 (D.C. Cir. 1996)(holding that prisoners' due process rights were not violated because the Parole Board's broad discretion to grant or deny parole even when an applicant satisfied the numerical requirements did not create a liberty interest in parole); *Blair-Bey v. Quick*, 159 F.3d 591, 592 (D.C. Cir. 1998)(noting that how the Parole Board exercises discretion is less important than that the discretion gets exercised).

  Whether an authority's exercise of paroling discretion violates the *ex post facto* clause can be a difficult question. *Garner*, 529 U.S. 244 at 250. The presence of discretion does not displace the protections of the *ex post facto* clause. *Id*. at 253. However, discretion, by its very definition, is subject to changes in the manner in which it is informed and exercised. *Id*. The

idea of discretion is that the decision maker has the capacity, and the obligation, to change and adapt based on experience. *Id*. New insights into the accuracy of predictions about the offense and risk of recidivism consequent upon the offender's release, along with a complex of other factors, inform parole decisions. *Id*.

The National Capital Revitalization and Self-Government Improvement Act ("Act") required the Commission to assume jurisdiction of the Parole Board after August 5, 1998. *Paroling, Recommitting, and Supervising Federal Prisoners: Prisoners Serving Sentences Under the District of Columbia Code*, 63 F.R. 39172. The Act gave the Commission authority to amend and supplement any regulation interpreting or implementing the relevant parole law of the District of Columbia. *Id*. As a result, the Commission supplemented the Parole Board's existing guidelines because of the high rate of upward departures from the numerical guidelines. *Id*. The modification to the guidelines was based on factors there were confirmed by the research data as correlated with violent recidivism. *Id*. Ultimately, because the modifications better reflect a prisoner's potential for violent recidivism, unstructured discretionary departures from the numerical guidelines that characterized the Parole Board's determinations would be unnecessary. *Id*.[1]

With regard to the specific changes challenged here, the modified §2.80, the revisions were designed to produce a score that better predicts the probability of violent crime offenses thereby capturing within the guidelines the many decisions that the Parole Board made outside the guidelines. *Id*. at 39174. This Circuit has noted that the Parole Board and Commission's

---

[1] In a random sample of 100 cases decided by the Parole Board in 1997, the commission departed from the numerical guidelines in more than half the cases. 63 F.R. 39172, 39173.

guidelines regarding initial parole mirrored each other. *Fletcher v. Reilly*, 433 F.3d 867, 867 (D.C. Cir. 2006).

Furthermore, the legal record regarding D.C. Board practices under the 1987 guidelines demonstrates that individuals such as Plaintiff - inmates who have committed two homicides, including first degree murder - would be unlikely to be released according to the Board's 1987 guidelines. In short, the Board's "practices" under the 1987 guidelines for individuals such as Plaintiff was to exceed those guidelines and exercise its discretion to set far-off hearing dates. *See e.g. Hall v. Henderson*, 672 A.2d 1047 (D.C. 1996)(one-time murderer continued above the guidelines); *McRae v. Hyman*, 667 A.2d 1356 (D.C. 1995)(inmate with extensive criminal history continued above the guidelines); *Smith v. Quick*, 680 A.2d 396 (D.C. 1996)(two-time rapist continued above guidelines).

Given these cases and others, when the Commission assumed the D.C. Board's paroling function in 1998, it conducted a review of the D.C. Board's practices under its guidelines and found that the Board exceeded those guidelines on a regular basis, mostly based on excessive violence in the inmate's criminal background. 63 F.R. 39171, 39172-73 (July 21, 1998); 63 F.R. 17771, 17772. Given the case law demonstrating broad-based discretionary departures and the Commission's research studies about D.C. Board practices, it is clear that the Board's "practice" under the 1987 guidelines regarding inmates such as Plaintiff was to dispense with those guidelines and upwardly depart from them, using their discretion under the parole statute.

Therefore, even if the Commission had applied the Parole Board's parole guidelines as he requests, Plaintiff cannot demonstrate that he would have had a significant possibility of getting released from custody earlier. Because of the discretionary nature of factual findings, the

5

Commission cannot predict how it would have applied the D.C. Board's 1987 guidelines, an application of the Commission's previous factual findings and discretionary decision-making illustrates that the Commission would not have ordered an earlier release for Plaintiff under that set of guidelines. Under the 1987 guidelines for D.C. Code offenders, found at 28 D.C.M.R. § 100.1 *et seq.*, the D.C. paroling authority is required to first assess a salient factor score, to determine parole prognosis, and then assess a number of pre and post incarceration factors. *McRae v. Hyman*, 667 A.2d 1356 (D.C. 1995); *Ellis v. District of Columbia*, 84 F.3d at 1415-1416. Notably, as here, *Garner* and, another Supreme Court case, *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499 (1995), involve challenges to parole denials by individuals involved in more than one homicide. Those challenges were unsuccessful.

 Applying this set of guidelines to Plaintiff's case, it is readily apparent that Plaintiff's salient factor score under the 1987 guidelines at his initial parole hearing would have been four, the same he received at his initial hearing in November 2000. *Compare* 28 C.F.R. 2.80 *to* 28 D.C. Mun. Regs. §200.1 (repealed); *Ellis*, *supra*, 84 F.3d 1413 at 1415-14117. This salient factor score would have placed Plaintiff in the "moderate" parole risk category under the 1987 guidelines, resulting in two points beings added to the D.C. "Grid Score." *Id*. Continuing with the application of pre and post incarceration factors considered under the guidelines, it appears that petitioner would have had one point added for violence in his offense. *Id*. Regarding Plaintiff's institutional conduct, it seems that he would have had one point deducted for program achievement (the Commission in fact found that he had engaged in superior programming), and he most likely would not have received any additional points for misconduct. *Id*. Thus, it appears that, had the Commission applied the 1987 guidelines of the Parole Board to Plaintiff's

case, Plaintiff's Grid Score would have been two, suggesting that Plaintiff be paroled after his initial hearing. Because Plaintiff did not incur many instances of institutional misconduct since this time,[2] had the Commission gone above these guidelines and continued him to subsequent hearings, Plaintiff's guidelines at those hearings would most likely have continued to suggest that parole be granted. Nevertheless, the Parole Board could have properly exercised its discretion to deny parole in light of the facts in Plaintiff's case.

Under *Fletcher* and *Garner*, however, Plaintiff cannot merely show that his guidelines would have suggested that he be paroled. Rather, Plaintiff must demonstrate that the practice under the current guidelines create a *significant* risk of increased incarceration beyond the practice of the former regime. Plaintiff can in no way meet this burden. This is so because the D.C. paroling authority has a duty to protect the public safety under the D.C. parole statute, and the statute requires that the paroling authority determine whether an inmate's release is "consistent with the public safety." *White v. Hyman*, 647 A.2d 1175, 1179 (D.C. 1994). Therefore, to the extent that Plaintiff is arguing that, because the 1987 guidelines suggest he would have been released, he has failed to state a claim.

In sum, given the severity and extensive nature of Plaintiff's offenses, he can in no manner demonstrate that the Commission's practice under the 2000 D.C. guidelines for D.C. Code offenders resulted in a more significant risk of increased punishment than the Parole Board's practice under the 1987 guidelines. *See generally Blair-Bay v. Quick*, 151 F.3d 1036, 1049 (D.C. Cir. 1998)(concluding that it was virtually impossible for plaintiff to establish an *ex*

---

[2] Plaintiff violated the rules of the institution in 2005 by fighting with another inmate, throwing punches at him.

*post facto* violation where the denial of parole was based on the then-new 1987 guidelines versus at the time that plaintiff committed his crimes where there were no guidelines and the Parole Board exercised naked discretion). Thus, even if Plaintiff fell into a class of prisoners to which the 1987 numerical guideline could have suggested parole, a decision outside the guidelines was the likely outcome because of his involvement in multiple homicides. Finally, contrary to Plaintiff's allegations, in its Notice of Action dated August 9, 2007, the Commission announced a departure from the guidelines because Plaintiff had been on parole for nine months for the first homicide when he committed the second.

## **CONCLUSION**

Upon the foregoing, Defendants respectfully request that the Court grant Defendants Motion for Summary Judgment.

Dated: December 4, 2007    Respectfully submitted,

___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

___/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7157

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants' reply to Plaintiff's opposition to Defendant's Motion for Summary Judgment was mailed by depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

Reginald S. Puifory
R 10597-007
Lewisburg
U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 1000
Lewisburg, PA 17837

on this 4th day of December, 2007

_/s/_____
KENNETH ADEBONOJO